# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MARK BREAUX                                          CIVIL ACTION

VERSUS                                              CASE NO. 16-2331

BOLLINGER SHIPYARDS, LLC, et al.                   SECTION: "G" (1)

### ORDER AND REASONS

In this litigation, Plaintiff Mark Breaux ("Plaintiff") alleges violations of his rights under the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") and the privacy rights accorded to him by the Louisiana Constitution.[1] Pending before the Court is Defendants' Bollinger Shipyards, LLC ("Bollinger"), Family Medical Services, LLC ("Family Medical"), and Dr. Darren Duet's ("Dr. Duet") (collectively "Defendants") "Motion for Summary Judgment."[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion in part to the extent it seeks summary judgment on Plaintiff's Louisiana invasion of privacy claim and deny the motion in part to the extent it seeks summary judgment on Plaintiff's ADA claims.

## I. Background

### A.    *Factual Background*

The following facts are alleged in the Amended Complaint or the parties' statements of material facts and are generally undisputed. Plaintiff was initially employed by Bollinger as a

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 38.

1

welder on August 19, 1998, but he was terminated on August 25, 1999, for breaking company policy.[3] Plaintiff re-applied for employment with Bollinger on November 30, 2011, and was hired as a tack welder.[4] Plaintiff was later promoted to welder on February 27, 2012.[5] As a welder, Plaintiff "had many job duties including that he was required to bind together structural metal components; perform good, cosmetic sound welds; work in confined and enclosed spaces; work and climb in elevations greater than five feet; wear a respirator; occasionally lift items between fifty and one-hundred pounds; and follow company policies and procedures."[6]

In 2004, prior to his employment with Bollinger, Plaintiff had a medical condition which involved damage to the ulnar nerve and ligaments on his left arm.[7] Plaintiff states that he was prescribed opioid pain killers, but that he had difficulty withdrawing from his prescribed painkillers and was prescribed Suboxone to aid him in withdrawing from using the painkillers.[8] According to Plaintiff, he was able to perform all of the functions of his job as a welder while taking Suboxone.[9] When Plaintiff was rehired by Bollinger in 2011, he submitted a Medical Examination Form and participated in a medical orientation, during which Bollinger's medical disclosure policies were explained, including the requirement that any employee working in a safety-sensitive position may not take a safety sensitive medication while working, unless the drug

---

[3] Rec. Doc. 45-1 at ¶¶ 11, 12.

[4] *Id.* at ¶ 13.

[5] *Id.* at ¶ 15.

[6] *Id.* at ¶ 16.

[7] Rec. Doc. 23 at ¶ 49.

[8] *Id.* at ¶ 50.

[9] *Id.* at ¶ 51.

was taken eight hours before their shift.[10] Plaintiff did not reveal his use of Suboxone on the Medical Examination Form or anytime thereafter.[11]

On December 9, 2015, he injured his left hand when he slipped outside of his home.[12] As a result, Plaintiff went to the emergency room, where he was treated for a hand fracture.[13] Plaintiff returned to work the next day, but when his hand began to swell, he reported the accident to his supervisor and was told to see a doctor if his hand continued to swell.[14] Thereafter, Plaintiff continued to treat his hand injury with Dr. Hilderbrand and took a medical leave of absence from work.[15]

On December 14, 2015, Bollinger notified Family Medical that Plaintiff would be entering into the Return to Work ("RTW") process.[16] As part of the RTW process, Plaintiff's medical records were sent to Family Medical.[17] Included in the medical records was an Ochsner St. Anne Emergency Room note from December 10, 2015, which indicated that Plaintiff was in remission for opioid dependence.[18] After seeing the Ochsner St. Anne Emergency Room note, Family Medical "suspected Plaintiff was taking safety-sensitive medications that he had not disclosed to

---

[10] Rec. Doc. 45-1 at ¶¶ 17, 20, 21.

[11] *Id.* at ¶¶ 19, 23. Defendants became aware of Plaintiff's use of Suboxone in February 2016. *Id.*

[12] *Id.* at ¶ 24.

[13] *Id.* at ¶ 25.

[14] *Id.* at ¶ 26.

[15] *Id.* at ¶ 27.

[16] *Id.* at ¶ 28.

[17] *Id.* at ¶ 31.

[18] *Id.* at ¶ 32.

Bollinger as required by Bollinger's Medical Disclosure Policy because Suboxone is sometimes prescribed as part of opioid agonist therapy."[19]

Plaintiff was released to return to work, full duty with no restrictions, by his treating physician, Dr. Hildebrand, on February 3, 2016.[20] On February 16, 2016, Plaintiff told Family Medical that he was still taking Suboxone.[21] Family Medical subsequently informed Bollinger that Plaintiff was taking a safety-sensitive medication and Family Medical recommended restricting Plaintiff from safety-sensitive job duties while on the medication.[22]

On February 25, 2016, Plaintiff wrote Bollinger's Human Resource Department a letter requesting an ADA accommodation that would allow Plaintiff to return to work while taking Suboxone.[23] In response, Bollinger representatives scheduled a meeting with Plaintiff, and during the meeting explained that "they could not allow Plaintiff to return to his job as a welder while he was taking Suboxone due to the safety risks posed by the drug usage."[24] Bollinger informed Plaintiff that he would be allowed several months of job-protected leave in order to allow Plaintiff time "to wean himself off of Suboxone so that he would be eligible for his job as a welder."[25] "Under Bollinger's policies, six-months is the maximum length of a leave of absence before an

---

[19] *Id.* at ¶ 33.

[20] *Id.* at ¶ 34.

[21] *Id.* at ¶¶ 35–36.

[22] *Id.* at ¶ 37.

[23] *Id.* at ¶¶ 41–42.

[24] *Id.* at ¶¶ 43–44.

[25] *Id.* at ¶ 46. Plaintiff disputes when this notification occurred. *Id.*

employee will be terminated. As such, Bollinger informed [Plaintiff] that he would be terminated on June 9, 2016, if he was not cleared to return to work by that date."[26]

On June 9, 2016, Bollinger filed a Separation Notice with the Louisiana Workforce Commission, notifying the commission that Plaintiff had been separated from employment on that date because he was "physically unable to work for 6 consecutive months."[27] At that time, Bollinger informed Plaintiff that if he was cleared to return to work by July 11, 2016, he would be guaranteed rehire with retention of all benefits.[28] Bollinger also informed Plaintiff that he could reapply for any available positions if he was able to return to work after July 11, 2016.[29]

## B.    *Procedural Background*

Plaintiff filed a complaint against Defendants on March 17, 2016, alleging that Defendants violated his rights under the FMLA and the ADA and the privacy rights accorded to him by the Louisiana Constitution.[30] On May 26, 2016, Defendants filed a motion to dismiss.[31] On June 14, 2016, Plaintiff filed an opposition to the motion to dismiss, wherein Plaintiff clarified that he was only pursuing an ADA claim against Bollinger and not the other defendants.[32] On March 23, 2017, the Court issued an order granting Defendants' motion to dismiss to the extent it sought dismissal

---

[26] *Id.* at ¶ 48.

[27] *Id.* at ¶ 54.

[28] *Id.* at ¶ 49. Plaintiff disputes whether this offer was an "accommodation." *Id.*

[29] *Id.* at ¶ 50.

[30] Rec. Doc. 1.

[31] Rec. Doc. 9.

[32] Rec. Doc. 10 at 1.

of Plaintiff's request for punitive damages under the FMLA and Louisiana state law.[33] The Court also concluded that Plaintiff failed to state a FMLA claim against Family Medical and Dr. Duet.[34] Therefore, the Court denied the motion without prejudice as to those claims and granted Plaintiff leave to amend the complaint to cure the deficiencies noted, if possible.[35]

On April 18, 2017, Plaintiff filed the Amended Complaint, stating claims under the FMLA against all Defendants, claims under the ADA against Bollinger, and an invasion of privacy claim under state law against Dr. Duet and Family Medical.[36] Defendants filed an answer to the Amended Complaint on May 2, 2017.[37]

On October 10, 2017, Defendants filed the instant Motion for Summary Judgment.[38] On October 31, 2017, Plaintiff filed an opposition to the Motion for Summary Judgment.[39] On November 1, 2017, Plaintiff filed an unopposed "Motion to Dismiss FMLA Claim with Prejudice,"[40] which the Court granted on November 3, 2017.[41] On November 8, 2017, with leave of Court, Defendants filed a reply brief in further support of the Motion for Summary Judgment.[42]

---

[33] Rec. Doc. 22 at 21.

[34] *Id.*

[35] *Id.*

[36] Rec. Doc. 23.

[37] Rec. Doc. 27.

[38] Rec. Doc. 38.

[39] Rec. Doc. 45.

[40] Rec. Doc. 46.

[41] Rec. Doc. 47.

[42] Rec. Doc. 51.

On December 15, 2018, with leave of Court, Plaintiff filed a supplemental brief in opposition to the Motion for Summary Judgment.[43] On January 12, 2018, with leave of Court, Defendants filed a supplemental brief in support of the Motion for Summary Judgment.[44] On June 21, 2018, with leave of Court, Defendants filed a second supplemental brief in further support of the Motion for Summary Judgment.[45]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motion for Summary Judgment*

In the motion, Defendants contend that they are entitled to summary judgment dismissing Plaintiff's claims that Bollinger violated the ADA by discriminating against Plaintiff, Bollinger violated the ADA by failing to accommodate Plaintiff's disability, Defendants violated the FMLA, and Defendants violated Louisiana privacy laws by obtaining Plaintiff's medical records.[46]

Defendants first argue that Plaintiff's claim that Bollinger violated the ADA by discriminating against him fails as matter law.[47] Defendants assert that Plaintiff's discrimination claim should be evaluated under the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[48] Defendants note that "to make out a prima facie case of disability discrimination, a plaintiff must show that: (1) he has a disability; (2) he is qualified for

---

[43] Rec. Doc. 61.

[44] Rec. Doc. 62.

[45] Rec. Doc. 73.

[46] Rec. Doc. 38.

[47] Rec. Doc. 38-2 at 10.

[48] *Id.*

the position in which he seeks employment; and (3) he was discriminated against because of his disability."[49] In the motion for summary judgment, Defendants do not contest that Plaintiff is disabled.[50] However, Defendants argue that Plaintiff cannot show that he was a "qualified individual" or that he was discriminated against because of his disability.[51]

Specifically, Defendants argue that the undisputed facts show that Plaintiff was not a qualified individual because he could not perform the essential functions of his job as a welder.[52] Defendants asserts that the job description for a welder provided by Bollinger lists an employee's ability to "follow all [of Bollinger's] polices, including those relevant to safety," as an essential function of the job.[53] Defendants aver that Bollinger's policies prohibit any employee working in a safety-sensitive position from taking safety-sensitive drugs within eight hours of reporting to work.[54] Defendants aver that welders are required "to wield dangerous equipment," and Plaintiff "was clearly unable to perform these essential job functions while using Suboxone."[55] Accordingly, Defendants assert that Plaintiff's ADA claim must fail because he was not a qualified individual.[56]

---

[49] *Id.*

[50] *Id.* at 11 ("As shown below, even assuming that Plaintiff was disabled or was regarded as disabled for the purposes of this summary judgment motion only, Plaintiff cannot satisfy the other two elements of his prima facie burden; moreover, he cannot show pretext.").

[51] *Id.* at 10–11.

[52] *Id.* at 11.

[53] *Id.* (citing Rec. Doc. 38-3 at 14).

[54] *Id.* (citing Rec. Doc. 38-3 at 2, 18).

[55] *Id.* at 11–12.

[56] *Id.* at 12.

Turning to the issue of whether Plaintiff was discriminated against because of his disability, Defendants contend that under the "direct threat" defense "an employer is not liable for adverse employment action taken against an otherwise qualified employee under the ADA when that employee becomes unqualified because of his inability to safely perform the essential functions of his job."[57] In this case, Defendants argue that Plaintiff's use of Suboxone "rendered him a direct threat to himself and his co-workers, and Bollinger was not required to reinstate him while he was still using the drug."[58] According to Defendants, "Plaintiff failed to disclose that his full medications were incompatible with his 'safety-sensitive' job, due to the threat they posed to his mental acuity."[59] Defendants assert that "Plaintiff was rendered unqualified by Suboxone that causes problems with coordination, dizziness, and impaired cognitive function."[60] Defendants also argue that Plaintiff's refusal to wean himself off of Suboxone and his failure to inform Bollinger that he was on this medication precludes Plaintiff from arguing that he was discriminated against because of a disability.[61]

Furthermore, even assuming that Plaintiff can establish a prima facie case of ADA discrimination, Defendants argue that Plaintiff has failed to demonstrate that Bollinger's "legitimate, non-discriminatory reason" for terminating Plaintiff's employment, *i.e.* "that his

---

[57] *Id.* (citing *Robertson v. Corval Constructors, Inc.*, 2015 WL 1650367, at *6 (M.D. La. Apr. 14, 2015); *Butler v. Louisiana Dep't of Pub. Safety & Corr.*, 2013 WL 2407567, at *7 (M.D. La. May 29, 2013) (citing *Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273 (1987); *E.E.O.C. v. Exxon*, 203 F.3d 871 (5th Cir. 2000)).

[58] *Id.* at 13.

[59] *Id.* (citing Rec. Doc. 38-3 at 2, 18; Rec. Doc. 38-6; Rec. Doc. 38-7).

[60] *Id.*

[61] *Id.* at 13–14 (citing *Peralta v. Avondale Indus.*, 2004 WL 2534168, at *4 (E.D. La. Nov. 8, 2004).

safety-sensitive medications prevented him from safely working as a welder, he refused to wean himself off of Suboxone despite receiving a leave of absence as an accommodation to do so, and his leave of absence exceed the maximum period of six months," was a pretext for a discriminatory motive.[62]

Second, Defendants argue that Plaintiff's claim that Bollinger violated his rights under the ADA by failing to accommodate his disability fails as a matter of law because (1) Plaintiff is not a qualified individual and (2) Bollinger offered Plaintiff reasonable accommodations.[63] For the reasons discussed above, Defendants contend that Plaintiff is not a qualified individual.[64] Defendants also assert that Bollinger offered Plaintiff a reasonable accommodation to permit him to return to his job when it offered Plaintiff an extended leave of absence to allow Plaintiff to wean himself off of Suboxone.[65] Despite this accommodation, Defendants contend that Plaintiff refused to use the time off work to wean himself off of Suboxone, and Defendants assert that Plaintiff is not entitled to receive his preferred accommodation, which was for Bollinger to make an exception to the safety rules.[66] Accordingly, Defendants contend that Plaintiff's failure to accommodate claim fails as a matter of law.[67]

Third, Defendants argue that Plaintiff's FMLA claim fails as a matter of law.[68] However,

---

[62] *Id.* at 14.

[63] *Id.*

[64] *Id.* at 15.

[65] *Id.* (citing Rec. Doc. 38-3 at 31–32, 40).

[66] *Id.*

[67] *Id.*

[68] *Id.* at 16–20.

this claim was dismissed on November 3, 2017, when the Court granted Plaintiff's unopposed "Motion to Dismiss FMLA Claim with Prejudice," rendering these arguments moot.[69]

Finally, Defendants assert that Plaintiff's claim for invasion of privacy under Louisiana law fails because Louisiana only recognizes actionable claims for invasion of privacy when the defendant's conduct is not reasonable and seriously interferes with the plaintiff's privacy interest.[70] In this case, Defendants contend that Family Medical and Dr. Duet sought Plaintiff's medical records in order to conduct the fitness for duty evaluation requested by Bollinger.[71] According to Defendants, Family Medical and Dr. Duet's actions were not unreasonable because they had "an obligation to provide honest and medically relevant recommendations to Bollinger when Bollinger seeks a fitness for duty evaluation for one of its employees in order to ensure its employee is actually fit to return from a medical leave of absence."[72] Furthermore, Defendants assert that Plaintiff was aware when he began working for Bollinger that Defendants would inquire into his health, and he routinely submitted information regarding his medication and physical well-being.[73] Defendants also assert that Plaintiff helped Family Medical obtain his medical records.[74] Therefore, because Family Medical and Dr. Duet "learned about Plaintiff's medical history by obtaining medical records to which Plaintiff consented or which they reasonably obtained,"

---

[69] *See* Rec. Doc. 47.

[70] *See* Rec. Doc. 38-2 at 21 (citing *Smith v. Arkansas Louisiana Gas Co.*, 26-180 (La. App. 2 Cir. 10/26/94); 645 So.2d 785, 791).

[71] *Id.*

[72] *Id.*

[73] *Id.* (citing Rec. Doc. 38-3 at 17–18; Rec. Doc. 38-5; Rec. Doc. 38-6; Rec. Doc. 38-7).

[74] *Id.* at 22 (citing Rec. Doc. 38-9).

Defendants contend that Plaintiff's claim for invasion of privacy fails as a matter of law.[75]

## B.     *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

In opposition, Plaintiff notes that the parties reached a settlement agreement regarding the FMLA claim, rendering Defendants' arguments regarding that claim moot.[76] Furthermore, Plaintiff avers that the Court dismissed Plaintiff's state law claims.[77] However, Plaintiff asserts that he intends to pursue his ADA claims against Bollinger.[78] According to Plaintiff, "Bollinger violated the ADA by universally applying a banned drug list to all employees without doing an individualized assessment of [Plaintiff] himself and also for failing to provide him with a reasonable accommodation for his disability."[79]

Plaintiff argues that summary judgment is precluded on his ADA claims because genuine issues of material fact exist as to whether Plaintiff could perform the essential functions of his job, which would make Plaintiff a qualified individual under the ADA.[80] While Plaintiff acknowledges that Bollinger's written job descriptions are given deference, Plaintiff asserts that the issue of whether a function is essential to performance of a job is an inquiry for the fact-finder that must be determined on a case-by-case basis.[81] According to Plaintiff, he could perform the essential functions of his job because Plaintiff executed them for years while on Suboxone and because

---

[75] *Id.*

[76] Rec. Doc. 45 at 1.

[77] *Id.* at 1.

[78] *Id.*

[79] *Id.*

[80] *Id.* at 8 (citing *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 695 (5th Cir. 2014)).

[81] *Id.*

Plaintiff's treating physician cleared Plaintiff to return to work as a welder.[82] Furthermore, Plaintiff contends that courts generally leave questions of what constitutes essential functions to the trier-of-fact.[83]

Next, Plaintiff contends that genuine issues of material fact prevent summary judgment on the "direct threat" defense.[84] Plaintiff asserts that the ADA and Fifth Circuit law require that the determination of whether an employee poses a direct threat to himself or other "be based on an individualized assessment of the person's present ability to safely perform the essential functions of the job."[85] Therefore, Plaintiff argues that Bollinger's safety-sensitive drug policy violates the ADA because it universally bans specific classes of drugs, without conducting an individualized assessment as to whether the employee could perform the essential functions of his job while on the medication listed in the safety-sensitive drug policy.[86] Plaintiff notes that in several of the district court cases cited by Defendants summary judgment was denied because genuine issues of material fact existed as to the direct threat defense.[87] Plaintiff also contends that Bollinger's medical review of Plaintiff violated the ADA because it was not job-related or a business necessity, or at a minimum that questions of fact exist regarding these issues.[88]

---

[82] *Id.*

[83] *Id.* at 8–9.

[84] *Id.* at 9.

[85] *Id.* at 10 (quoting *Kapche v. City of San Antonio*, 176 F.3d 840, 844 (5th Cir.1999) (quoting 29 C.F.R. § 1630.2(r)).

[86] *Id.* at 11.

[87] *Id.* at 12 (citing *Butler v. Louisiana*, 12-00420 (M.D. La. 12/3/2014); *E.E.O.C v. E.I DuPont de Nemours*, 347 F. Supp 2d 284 (E.D. La. 2004)).

[88] *Id.* at 14–15.

Next, Plaintiff argues that Bollinger discriminated against him by failing to accommodate his disability.[89] Plaintiff contends that once an employee requests an accommodation under the ADA the employer and employee must work to find an accommodation through an interactive process.[90] Plaintiff argues that the process conducted by Bollinger was not interactive and that Bollinger's only accommodation was that Plaintiff could return to work when he was no longer taking Suboxone.[91]

Last, Plaintiff argues he does not need to prove that Bollinger's reason for terminating him was pretextual because its stated reason for termination was itself discriminatory.[92] Furthermore, even assuming that he must show pretext, Plaintiff contends that there is a genuine issue of material fact regarding whether the stated reason for termination was pretextual.[93] Specifically, Plaintiff notes that Bollinger has provided multiple reasons for terminating him including: (1) "not actively working for 6 months"; (2) being "[p]hysically unable to work for 6 consecutive months"; (3) "his medications made him a direct threat to his own safety and that of his co-workers"; and (4) "his safety-sensitive medications prevented him from safely working as a welder, he refused to wean himself off of Suboxone despite receiving a leave of absence as an accommodation to do so, and his leave of absence exceed the maximum period of six months."[94] Plaintiff argues that these

---

[89] *Id.* at 15.

[90] *Id.* at 15–16.

[91] *Id.* at 16.

[92] *Id.* at 17.

[93] *Id.*

[94] *Id.* at 17–18.

reasons for termination are pretextual to the extent that they are based on the idea that Plaintiff could not perform his job duties in a safe manner because Plaintiff had successfully completed his job duties for years while taking Suboxone.[95]

## C.  *Defendants' Arguments in Further Support of the Motion for Summary Judgment*

In the reply brief, Defendants argue that the undisputed facts show that Bollinger did not violate the ADA.[96] First, Defendants contend that Plaintiff failed to dispute the material facts that demonstrate that Plaintiff is not a protected individual under the ADA.[97] Defendants note that although Plaintiff argued that a written job description should not be given dispositive weight in the face of contrary evidence, Plaintiff presented no contrary evidence to show that the written job description did not accurately describe the essential job functions of Plaintiff's job as a welder.[98] Furthermore, although Plaintiff argues that the fact he was employed as a welder for several years while taking Suboxone, Defendants note that Plaintiff did not present any evidence to show that Bollinger was aware of Plaintiff's drug usage before February 2016 or that such drug usage did not violate the safety policies of Bollinger.[99]

Defendants assert that under Fifth Circuit law a safety requirement is a "qualification standard no different from other requirements defended under the ADA's business necessity

---

[95] *Id.* at 18.

[96] Rec. Doc. 57 at 4.

[97] *Id.*

[98] *Id.*

[99] *Id.*

provision."[100] Therefore because Bollinger had an express policy requiring all employees in safety-sensitive positions, including welders, to remain free from the influence of safety-sensitive drugs, including Suboxone, Defendants contend that a person who cannot meet this requirement is not qualified for the position.[101] Moreover, Defendants assert that the policy was tailored in application, as required by Fifth Circuit precedent, because it only applies to employees in safety-sensitive positions and "the magnitude of consequences of a welder . . . becoming cognitively impaired due to the influence of Suboxone would be huge."[102] Accordingly, Defendants assert that "the safety requirements imposed by Bollinger as a qualification for working in such a position is a business necessity."[103]

Defendants do not dispute that Plaintiff's treating physician released him to return to work.[104] Nevertheless, Defendants contend that Plaintiff is not a qualified individual under the ADA.[105] Furthermore, Defendants assert that Plaintiff's contention that he is a qualified individual because he performed the job for years while taking Suboxone is misplaced, because "even an employee with a serious medical condition who has not yet had a major accident at work can still pose a direct threat to workplace safety."[106] Defendants argue that Bollinger learned of Plaintiff's use of Suboxone, considered the safety risks, considered the recommendation made by Family

---

[100] *Id.* (citing *E.E.O.C. v. Exxon Corp.*, 203 F.3d 871, 874 (5th Cir. 2000)).

[101] *Id.* at 4–5.

[102] *Id.* at 5 (citing *Exxon Corp.*, 203 F.3d at 875).

[103] *Id.* at 6.

[104] *Id.*

[105] *Id.*

[106] *Id.* (citing *Darnell v. Thermafiber, Inc.*, 417 F. 3d 657, 662 (7th Cir. 2005)).

Medical and Dr. Duet, and determined that Plaintiff's drug usage posed a direct threat.[107] As such, Defendants aver that "the undisputed facts show that Plaintiff is not a qualified individual and his employment in a safety-sensitive position while under the influence of Suboxone would constitute a direct safety threat."[108]

Second, Defendants assert that Plaintiff has failed to dispute the material facts that show that Bollinger engaged in an interactive process in an attempt to accommodate Plaintiff's condition.[109] Defendants contend that the undisputed facts show that Bollinger offered Plaintiff the following four accommodations: (1) Bollinger offered to allow Plaintiff to apply for a non-safety sensitive position if such a position became available;[110] (2) Jerome Eymard, a representative for Bollinger, offered Plaintiff 14 weeks of job-protected leave in order to allow him time to wean himself off of Suboxone;[111] (3) Bollinger offered Plaintiff an additional month of leave in the form of a guaranteed rehire after his termination if Plaintiff weaned himself off of Suboxone by that time;[112] and (4) Bollinger offered Plaintiff the opportunity to reapply for any available position after his time for guaranteed rehire expired.[113] Defendants assert that Plaintiff is only entitled to a "reasonable" accommodation, not his preferred accommodation.[114]

---

[107] *Id*. at 6–7.

[108] *Id*. at 7.

[109] *Id*.

[110] *Id*. (citing Rec. Doc. 45-1 at ¶ 45).

[111] *Id*. (citing Rec. Doc. 45-1 at ¶ 46).

[112] *Id*. (citing Rec. Doc. 45-1 at ¶ 49).

[113] *Id*. (citing Rec. Doc. 45-1 at ¶ 50).

[114] *Id*. at 8 (citing *Griffin v. United Parcel Service, Inc.*, 661 F. 3d 216, 224 (5th Cir. 2011)).

Defendants contend that individuals can usually wean themselves off of Suboxone in a few weeks,[115] and so Defendants assert that the accommodations provided to Plaintiff were reasonable.[116]

Third, Defendants contend that the undisputed facts show that Bollinger's enrollment of Plaintiff in the return to work process was job-related and consistent with business necessity.[117] According to Defendants, requests for medical documentation were made to ensure that Plaintiff had been properly treated and had recovered sufficiently to return to work safely.[118] Because Plaintiff worked in a safety-sensitive position, Defendants contend that such inquiries were job-related and consistent with business necessity.[119] Fourth, even if Plaintiff were protected by the ADA, Defendants assert that Plaintiff has failed to show that the legitimate reasons for his termination were instead pretextual.[120]

Finally, Defendants contend that Plaintiff's Louisiana state law invasion of privacy claim should be dismissed because Plaintiff failed to put forth any evidence that Dr. Duet and Family Medical's actions in obtaining Plaintiff's medical records were unreasonable or that Plaintiff did not authorize or consent to Family Medical obtaining the records.[121]

---

[115] *Id*. (citing Rec. Doc. 57-1 at 1).

[116] *Id*.

[117] *Id*. at 9.

[118] *Id*.

[119] *Id*.

[120] *Id*.

[121] *Id*. at 10.

**D.** ***Plaintiff's Supplemental Arguments in Opposition to the Motion for Summary Judgment***

In the supplemental memorandum, Plaintiff first argues that "without the statutory touchstone of individualized assessment, allowing employers in heavy industry to pick and choose lists of proscribed prescription drugs . . . exactly constitutes using standards and criteria that have the effect of discrimination on the basis of disability."[122] Plaintiff asserts that such a practice is illegal under Section 12112 of the ADA.[123] Furthermore, Plaintiff contends that "it is well settled that it is impermissible under ADA for employers to discriminate against disabled employees automatically as a result of his condition or symptoms without assessing the individual's abilities."[124]

Plaintiff asserts that the Fifth Circuit has determined that the issue of whether a disabled individual is "qualified" based on an alleged safety concern is a question of fact that should be left to the trier of fact.[125] Moreover, Plaintiff asserts that the Fifth Circuit has opined that the issue of "whether one is a direct threat is a complicated, fact intensive determination, not a question of law,"[126] which "shall be based on an individualized assessment of the person's present ability to safely perform the essential functions of the job."[127] Plaintiff also cites district court cases where summary judgment was denied because the issue of whether an employer's decision that the

---

[122] Rec. Doc. 61 at 3.

[123] *Id.*

[124] *Id.* at 3–4 (citing *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987)).

[125] *Id.* at 4–5 (citing *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758 (5th Cir. 1996)).

[126] *Id.* at 6 (citing *Rizzo*, 84 F.3d at 764).

[127] *Id.* (quoting *Kapche v. City of San Antonio*, 176 F.3d 840, 844 (5th Cir. 1999) (quoting 29 C.F.R. § 1630.2(r)).

plaintiff posed a direct threat was objectively reasonable presented a genuine issue of material fact for the jury to determine.[128]  Accordingly, Plaintiff contends that the motion for summary judgment must be denied because the analysis of whether Plaintiff actually posed a threat to himself or others is a complex, fact intensive inquiry that cannot be resolved on summary judgment.[129]

### E.      *Defendants' Supplemental Arguments in Support of Motion for Summary Judgment*

In the supplemental memorandum, Defendants assert that Plaintiff is asking the Court to second-guess the reasonable business decisions made by Bollinger, which Defendants contend is prohibited by Fifth Circuit precedent.[130] Defendants assert that the material facts at issue in this case are not in dispute.[131]  Defendants assert that the Fifth Circuit has affirmed district court orders granting summary judgment based on the direct threat defense and a finding that the employee was not a qualified individual.[132] Defendants also cite district court cases granting summary judgment on these issues.[133]

Defendants contend that Plaintiff is incorrect in his assertion "that an employer's policy which is job-related and consistent with business necessity cannot be applied without violating the

---

[128] *Id*. at 8–9 (citing *E.E.O.C v. E.I DuPont de Numours*, 347 F. Supp 2d 284 (E.D. La. 2004); *E.E.O.C. v. Burlington Northern & Santa Fe Ry. Co.*, 621 F. Supp. 2d 587 (W.D. Tenn. 2009); *Butler v. Louisiana*, 12-00420 (M.D. La. 12/3/2014)).

[129] *Id*. at 10.

[130] Rec. Doc. 62 at 1 (citing *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988)).

[131] *Id*. at 2.

[132] *Id.* at 4 (citing *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998); *Bergeron v. City of Baton Rouge*, 31 F. App'x 158 (5th Cir. 2001)).

[133] *Id.* (citing *Robertson v. Corval Constructors, Inc.*, 2015 WL 1650367, at *6 (M.D. La. Apr. 14, 2015); *Nall v. BNSF Ry. Co.*, 2017 WL 607126, at *16 (S.D. Tex. Feb. 14, 2017)).

ADA if no individualized assessment is conducted."[134] According to Defendants, "[t]he language of the ADA does not require an individualized assessment when an employer's qualification standard determines that an individual is unqualified for a job position as long as that standard is job-related and consistent with business necessity."[135] Defendants assert that the policy in question falls within this exception because it only applies to safety-sensitive positions, was put in place due to safety concerns, and safety was an essential job function for a welder.[136]

Defendants contend that Bollinger's safety policy is not the result of stereotypical assumptions, but is instead based on available medical information and the determined potential side effects of dangerous narcotics.[137] Additionally, Defendants assert that "Plaintiff's argument that Bollinger's belief in the risk of harm is unreasonable because [Plaintiff] has not yet suffered an accident due to Suboxone-usage is without merit" because the Fifth Circuit does not require an employer "to wait until after there is an emergency to take action protective of the public and its employees."[138]

Finally, Defendants contend that an individualized assessment was performed in this case, even though it was not required, when Bollinger considered Plaintiff's Suboxone use, the medical restrictions recommended by Family Medical, and Plaintiff's job functions in making its decision

---

[134] *Id.* at 5.

[135] *Id.* (citing 42 U.S.C. § 12112(b)(6)).

[136] *Id.* at 5–6.

[137] *Id.* at 8 (citing *E.E.O.C. v. Exxon Corp.*, 203 F.3d 871 (5th Cir. 2000)).

[138] *Id.* (quoting *Atkins v. Salazar*, 455 F. App'x 385 (5th Cir. 2011)).

to restrict him from safety-sensitive duty.[139] Accordingly, Defendants argue that summary judgment should be granted because based on the law and undisputed facts, Plaintiff's claims under the ADA fail.[140]

## F. *Defendants' Additional Supplemental Arguments in Support of Motion for Summary Judgment*

Defendants filed a second supplemental memorandum "to direct the Court's attention to a recent ruling by another division of the court, *Christopher L. Emmons v. C-Innovation, LLC*, No. 17-4674, Rec. Doc. 32 (E.D. La. Apr. 9, 2018), that dismissed the plaintiff's ADA claims on summary judgment based upon facts very similar to this case."[141] According to Defendants, the facts and holding in *Emmons* are highly relevant to this case because there the district court granted summary judgment in the defendant's favor, stating, "Although Plaintiff apparently would have preferred to continue using Adderall for his ADHD, it is beyond peradventure that ADA ensures only a reasonable accommodation of disability where such an accommodation is possible. On the instant showing made, no dispute of material fact has been shown to exist regarding the reasonableness of the accommodation made by Defendant . . . ."[142] In this case, Defendants assert that Bollinger offered four separate and reasonable accommodations to Plaintiff.[143] Therefore, Defendants assert that the Motion for Summary Judgment should be granted.[144]

---

[139] *Id.* at 9–10.

[140] *Id.* at 11.

[141] Rec. Doc. 73 at 1.

[142] *Id.* at 1–2.

[143] *Id.* at 2.

[144] *Id.*

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[145] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[146] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[147] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[148] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[149]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[150] Thereafter, the nonmoving party

---

[145] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[146] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[147] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[148] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[149] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[150] *Celotex*, 477 U.S. at 323.

should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[151] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[152] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[153] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[154]

## IV. Analysis

### A.     Whether Defendants are Entitled to Summary Judgment on Plaintiff's Claim that Bollinger Violated the ADA by Discriminating Against Him?

As an initial matter, the Court must address the standard for evaluating Plaintiff's claim that Bollinger violated the ADA by discriminating against him. Defendants assert that Plaintiff's discrimination claim should be evaluated under the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[155]  In response, Plaintiff asserts that he does

---

[151] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[152] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[153] *Little*, 37 F.3d at 1075.

[154] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[155] Rec. Doc. 38-2 at 10.

not have to prove pretext because Defendant's stated reason for termination is discriminatory.[156]

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment."[157] A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[158] To establish a claim of discrimination under the ADA, a plaintiff can prove discrimination in two ways, either "by direct evidence or by an indirect or inferential method of proof."[159] The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination under the ADA in cases where there is no direct evidence of discrimination.[160] However, "[i]n the rare situation in which the evidence establishes that an employer openly discriminates against an individual it is not necessary to apply the mechanical formula of *McDonnell Douglas* to establish an inference of discrimination."[161]

In *Rizzo v. Children's World Learning Centers, Inc.*, the district court granted summary judgment for the employer after applying the *McDonnell Douglas* burden shifting framework because it found that although the plaintiff had established a prima facie case of discrimination,

---

[156] Rec. Doc. 45 at 17.

[157] 42 U.S.C. § 12112(a).

[158] 42 U.S.C. § 12111(8).

[159] *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 762 (5th Cir. 1996)

[160] *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Mooney v. Aramco Services, Co.*, 54 F.3d 1207, 1216 (5th Cir.1995).

[161] *Id.* (quoting *Moore v. U.S.D.A.*, 55 F.3d 991, 995 (5th Cir. 1995); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).

she had failed to show that the employer's legitimate, nondiscriminatory reason for its employment decision was pretextual.[162] There, the employer did not deny that it removed the plaintiff from her job driving children in a van because of her hearing impairment.[163] Instead, the employer asserted that it had a reason for the discrimination, namely that the plaintiff's "driving of the van would pose a direct threat to the children, because she might not be able to hear if one of them were choking."[164] Therefore, the Fifth Circuit found that the district court improperly analyzed the case under the *McDonnell Douglas* burden shifting framework because there was direct evidence that the employer made an employment decision because of a disability.[165] Accordingly, the Fifth Circuit determined that the district court erred in requiring Plaintiff to show pretext, and instead found that the Plaintiff need only show that she had a disability, was qualified for the job, and an adverse employment decision was taken against her because of her disability.[166]

In the motion for summary judgment, Defendants do not contest that Plaintiff is disabled, *i.e.* Plaintiff has an opioid dependency and must take Suboxone to manage the condition.[167] Defendants also concede that Plaintiff was fired because he did not "wean" himself off of Suboxone.[168] Therefore, there is direct evidence that Bollinger made an employment decision

---

[162] *Id.* at 761.

[163] *Id.* at 762.

[164] *Id.*

[165] *Id.*

[166] *Id.* at 763.

[167] Rec. Doc. 38-2 at 11 ("As shown below, even assuming that Plaintiff was disabled or was regarded as disabled for the purposes of this summary judgment motion only, Plaintiff cannot satisfy the other two elements of his prima facie burden; moreover, he cannot show pretext.").

[168] *Id.* at 7–8.

because of Plaintiff's disability. Accordingly, the Court will not apply the *McDonnell Douglas* burden shifting framework to this motion. Instead, the Court will consider whether: (1) Plaintiff has a disability; (2) he is qualified for the position; and (3) he was discriminated against because of his disability.[169] The Court addresses each of these elements in turn to determine whether summary judgment would be appropriate.

### 1. Whether Plaintiff has a Disability?

A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual."[170] As noted above, in the motion for summary judgment, Defendants do not contest that Plaintiff is disabled due to his opioid dependency, which requires him to take Suboxone to manage the condition.[171] Therefore, it would be inappropriate to grant summary judgment in favor of Defendants on the issue of whether Plaintiff is disabled under the ADA.

### 2. Whether Plaintiff is Qualified for the Position of Welder?

Defendants argue that the undisputed facts show that Plaintiff was not a qualified individual because he could not perform the essential functions of his job as a welder.[172] Defendants aver that Bollinger's policies prohibit any employee working in a safety-sensitive position from taking

---

[169] *Rizzio*, 84 F.3d at 763.

[170] 42 U.S.C. § 12112(a).

[171] Rec. Doc. 38-2 at 11 ("As shown below, even assuming that Plaintiff was disabled or was regarded as disabled for the purposes of this summary judgment motion only, Plaintiff cannot satisfy the other two elements of his prima facie burden; moreover, he cannot show pretext.").

[172] Rec. Doc. 38-2 at 11.

safety-sensitive drugs, including Suboxone, within eight hours of reporting to work.[173] Moreover, Defendants aver that welders are required "to wield dangerous equipment," and Plaintiff "was clearly unable to perform these essential job functions while using Suboxone."[174] While Plaintiff acknowledges that Bollinger's written job descriptions are given deference, Plaintiff asserts that the issue of whether a function is essential to performance of a job is an inquiry for the fact-finder that must be determined on a case-by-case basis.[175] According to Plaintiff, he could perform the essential functions of his job because Plaintiff executed them for years while on Suboxone and because Plaintiff's treating physician cleared Plaintiff to return to work as a welder.[176]

As noted above, the ADA prohibits discrimination against a "qualified individual," which means an "individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires."[177] In determining whether a plaintiff is a "qualified individual" with a disability, a court must first determine whether the plaintiff can perform the essential functions of the job, which are those functions that bear more than a marginal relationship to the job at issue.[178] Only if the court determines that the plaintiff cannot perform the essential functions of the job does the court consider whether a reasonable accommodation by the employer would enable him to perform those

---

[173] *Id.* (citing Rec. Doc. 38-3 at 2, 18).

[174] *Id.* at 11–12.

[175] Rec. Doc. 45 at 8.

[176] *Id.*

[177] 42 U.S.C. § 12111(8).

[178] *See Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993); *Daugherty v. City of El Paso*, 56 F.3d 695, 696 (5th Cir. 1995).

functions.[179] Although the ADA provides a right to a reasonable accommodation, it "does not require an employer to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties."[180]

"Courts owe deference to an employer's position description: 'consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.'"[181] However, this deference is not absolute:

> The inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential. For example, an employer may state that typing is an essential function of a position. If, in fact, the employer has never required any employee in that particular position to type, this will be evidence that typing is not actually an essential function of the position.[182]

Accordingly, "[f]act-finders must determine whether a function is 'essential' on a case-by-case basis."[183]

Here, the job description of a welder required individuals to bind together structural metal components; perform good, cosmetic sound welds; work in confined and enclosed spaces; work and climb in elevations greater than five feet; wear a respirator; occasionally lift items between

---

[179] *Chandler*, 2 F.3d at 1393–94.

[180] *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir.1998);

[181] *E.E.O.C. v. LHC Group*, 773 F.3d 688, 697–98 (5th Cir. 2014) (quoting 42 U.S.C. § 12111(8)).

[182] *Id.* at 698 (quoting Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. pt. 1630, app. § 1630.2(n)).

[183] *Id.*

fifty and one-hundred pounds; and follow company policies and procedures.[184] Bollinger contends that Plaintiff was clearly unable to perform these essential job functions while using Suboxone. Accordingly, Defendants assert that Plaintiff is not qualified for the position because he cannot meet Bollinger's qualification standards, specifically the standard prohibiting an employee working in a safety-sensitive position from using safety-sensitive drugs. However, the parties do not dispute that Plaintiff performed the job of welder for Bollinger for approximately three years between 2012 and 2015 without incident.[185] Therefore, a reasonable trier of fact could conclude that Plaintiff could perform the essential functions of the welding position. Instead,

"The ADA prohibits an employer from using qualification standards that screen out a disabled individual or class."[186] An employer accused of violating the ADA by using such qualification standards may raise certain affirmative defenses to such a charge.[187] Specifically, the ADA provides that "[i]t may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards . . . that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity. . . ."[188] "Once an employee shows that a qualification standard tends to screen out an individual with a disability, the employer shoulders the burden of proving

---

[184] Rec. Doc. 38-3 at 14.

[185] Rec. Doc. 38-1 at 3–5.

[186] *E.E.O.C. v. Exxon Corp.*, 203 F.3d 871, 872 (5th Cir. 2000) (citing 42 U.S.C. § 12112(b)(6)).

[187] *Id.*

[188] *Id.* at 872–73 (citing 42 U.S.C. § 12113(a)).

that the challenged standard is job-related and consistent with business necessity."[189]

To successfully defend a qualification standard on the basis of the business necessity defense, an employer must prove by a preponderance of the evidence that such standards are: "(1) uniformly applied; (2) job-related for the position in question; (3) consistent with business necessity; and (4) cannot be met by a person with plaintiff's disability even with a reasonable accommodation."[190]

"[F]or a qualification standard to be 'consistent with business necessity,' the employer must show that it substantially promotes the business's needs."[191] Concerning safety-based qualification standards, the Fifth Circuit has elaborated that:

> In evaluating whether the risks addressed by a safety-based qualification standard constitute a business necessity, the court should take into account the magnitude of possible harm as well as the probability of occurrence. The acceptable probability of an incident will vary with the potential hazard posed by the particular position: a probability that might be tolerable in an ordinary job might be intolerable for a position involving atomic reactors, for example. In short, the probability of the occurrence is discounted by the magnitude of its consequences.[192]

The ADA further defines the term "qualification standards" to "include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace."[193] An employee is a direct threat if he poses "a significant risk to the health or safety

---

[189] *Atkins v. Salazar*, 677 F.3d 667, 681 (5th Cir. 2011) (internal citations omitted).

[190] *Id.* at 681–82.

[191] *Id.* at 682.

[192] *Id.* (quoting *Exxon*, 203 F.3d at 875).

[193] 42 U.S.C. § 12113(b).

of others that cannot be eliminated by reasonable accommodation."[194] In determining "whether a person poses a direct threat," an employer must conduct "an individualized assessment of the person's 'present ability to safely perform the essential functions of the job.'"[195]

The relationship between the "business necessity" defense and the "direct threat" defense was examined by the Fifth Circuit in *E.E.O.C. v. Exxon Corporation*.[196] There, the E.E.O.C. brought suit on behalf of certain Exxon employees, alleging that Exxon's substance abuse policy, which permanently removed any employee who had undergone treatment for substance abuse from certain safety-sensitive, little-supervision positions, violated the ADA.[197] Exxon had adopted the policy "in response to the 1989 Exxon Valdez incident, in which one of its tankers ran aground, causing environmental injury and resulting in billions of dollars of liability for Exxon," because concerns arose that the tanker's chief officer's previously treated alcoholism might have contributed to the accident.[198] Before trial, the district court granted the E.E.O.C's motion for partial summary judgment "on the grounds that Exxon must defend its policy under the 'direct threat' provision of the ADA."[199] On appeal, Exxon argued that it could defend the policy under either the direct threat provision or the business necessity provision.[200]

The Fifth Circuit reversed the district court's order, holding that in cases "where an

---

[194] 42 U.S.C. § 12111(3).

[195] *Kapche v. City of San Antonio*, 304 F.3d 493, 494 (5th Cir .2002) (quoting 29 C.F.R. § 1630.2(r)).

[196] *Exxon*, 203 F.3d at 873.

[197] *Id.* at 872.

[198] *Id.*

[199] *Id.*

[200] *Id.* at 873.

employer has developed a standard applicable to all employees of a given class . . . an employer need not proceed under the direct threat provision of . . . but rather may defend the standard as a business necessity." [201] The Fifth Circuit reasoned that "[i]n cases where an employer has developed a general safety requirement for a position, safety is a qualification standard no different from other requirements defended under the ADA's business necessity provision." [202] The Fifth Circuit noted that "[d]irect threat focuses on the individual employee, examining the specific risk posed by the employee's disability," whereas "business necessity addresses whether the qualification standard can be justified as an across-the-board requirement." [203] Under either defense, the court stated that "the proofs will ensure that the risks are real and not the product of stereotypical assumptions." [204] Thus, an employer may defend a qualification on either ground, depending on the nature of the qualification standard.

In this case, Defendants rely on both the "direct threat" defense and the "business necessity" defense. Defendants present evidence that Bollinger has an express policy that requires all employees in safety-sensitive positions to remain free from the influence of safety-sensitive drugs as a requirement for working in safety-sensitive positions. [205] Furthermore, Plaintiff does not dispute that the position of welder is a safety-sensitive position at Bollinger due to the dangerous

---

[201] *Id.* at 875.

[202] *Id.* at 874 (citing 29 C.F.R. § 1630.2(q)).

[203] *Id.* at 875.

[204] *Id.*

[205] Rec. Doc. 45-1 at ¶ 21; Rec. Doc. 38-3 at 17–18.

nature of the job.[206] This qualification standard would screen out an individual with a disability whose disability requires use of a safety-sensitive drug. Therefore, Defendants shoulder the burden of proving that the challenged standard is job-related and consistent with business necessity.[207] Defendants do not present any evidence that the safety-standard is consistent with business necessity due to the magnitude of possible harm or the probability of occurrence.[208] Whereas Plaintiff presents evidence that his treating physician, Dr. Walter J. Birdsall, Jr., released him to return to work as a welder without any job restrictions despite his treatment for opioid dependency and his "opioid agonist therapy."[209] This evidence tends to suggest that at least in Dr. Birdsall's opinion the probability of a possible harm occurring was low. Accordingly, a genuine issue of material fact is in dispute regarding whether Bollinger's policy is consistent with business necessity, because it is disputed whether the probability of the occurrence is outweighed by the magnitude of the consequences. Therefore, summary judgment on Bollinger's affirmative defense of business necessity must be denied.

Bollinger also asserts that summary judgment is appropriate because Plaintiff's use of Suboxone "rendered him a direct threat to himself and his co-workers."[210] In response, Plaintiff asserts that the Fifth Circuit has opined that the issue of "whether one is a direct threat is a

---

[206] Rec. Doc. 45-1 at ¶ 28.

[207] *Atkins*, 677 F.3d at 681.

[208] *Id.* at 682 (quoting *Exxon*, 203 F.3d at 875).

[209] Rec. Doc. 45-3 at 5.

[210] Rec. Doc. 38-2 at 13.

complicated, fact intensive determination, not a question of law,"[211] which "shall be based on an individualized assessment of the person's present ability to safely perform the essential functions of the job."[212]

As noted above, the ADA provides that "'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the work place."[213] The regulations define a direct threat as:

> a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> > (1) The duration of the risk;
> > (2) The nature and severity of the potential harm;
> > (3) The likelihood that the potential harm will occur; and
> > (4) The imminence of the potential harm.[214]

"Whether one is a direct threat is a complicated, fact intensive determination, not a question of law. To determine whether a particular individual performing a particular act poses a direct risk to others is a matter for the trier of fact to determine after weighing all of the evidence about the nature of the risk and the potential harm."[215]

---

[211] Rec. Doc. 45 at 6 (citing *Rizzo*, 84 F.3d at 764).

[212] *Id*. (quoting *Kapche v. City of San Antonio*, 176 F.3d 840, 844 (5th Cir. 1999) (quoting 29 C.F.R. § 1630.2(r)).

[213] 42 U.S.C. § 12113(b).

[214] 29 C.F.R. § 1630.2(r).

[215] *Rizzo*, 84 F.3d at 764.

In this case, there are material facts in dispute regarding the nature of the risk and the potential harm. Defendants present evidence showing that Suboxone is a Schedule III drug and classified as a narcotic.[216] Furthermore, Defendants present evidence showing that Suboxone can cause "sedation, analgesia, and other symptoms of central nervous system depression."[217] In response, Plaintiff presents evidence showing that he took Suboxone throughout his employment with Bollinger without incident. Plaintiff also presents evidence that his treating physician released him to return to work as a welder without any job restrictions despite his treatment for opioid dependency and his "opioid agonist therapy."[218] Therefore, Plaintiff's evidence suggests that, although Suboxone can cause the symptoms reported by Defendants, it did not cause these symptoms in Plaintiff. Accordingly, a genuine issue of material fact is in dispute regarding the nature of the risk and the likelihood of potential harm. Therefore, summary judgment on Bollinger's affirmative defense that Plaintiff posed a "direct threat" to himself and others must be denied. For these same reasons, summary judgment on the issue of whether Plaintiff is a qualified individual is also denied.

### 3. Whether Plaintiff Suffered an Adverse Employment Action Because of a Disability?

Finally, even if a plaintiff establishes that he was a qualified individual for the job at issue, he must also show that the adverse employment action was taken because of the disability.[219]

---

[216] Rec. Doc. 57-1 at 1.

[217] *Id.*

[218] Rec. Doc. 45-3 at 5.

[219] *Rizzo*, 84 F.3d at 764.

Defendants argue that Plaintiff's refusal to wean himself of Suboxone and his failure to inform Bollinger that he was on this medication precludes Plaintiff from arguing that he was discriminated against because of any disability, as the medication made Plaintiff a direct threat to the safety of himself and others.[220]

It is undisputed that the use of Suboxone within eight hours of reporting to work or during shifts is expressly prohibited by Bollinger's policy for employees in safety-sensitive positions, such as welders. Bollinger informed Plaintiff that he could not return to work as a welder unless he could wean himself off of Suboxone. The disability alleged here is not just Plaintiff's opioid dependency, but the fact that he must take certain medications, namely Suboxone, to manage the condition. It is undisputed that Bollinger refused to allow Plaintiff to return to work because of his use of Suboxone. Therefore, Plaintiff has put forth sufficient evidence to allow a reasonable trier of fact to conclude that Bollinger refused to allow Plaintiff to return to work because of an alleged or perceived disability, and thereby defeat summary judgment on this issue. Moreover, for the reasons discussed above, there is a genuine issue of material fact as to whether Plaintiff's use of Suboxone is a direct threat, making summary judgment inappropriate.

## B.    *Whether Defendants are Entitled to Summary Judgment on the ADA Failure to Accommodate Claim?*

Defendants also seek summary judgment on Plaintiff's claim that Bollinger violated his rights under the ADA by failing to accommodate his disability.[221] Defendants contend that this claim fails as a matter of law because (1) Plaintiff is not a qualified individual and (2) Bollinger

---

[220] Rec. Doc. 38-2 at 13–14.

[221] *Id.* at 14.

offered Plaintiff reasonable accommodations.[222] In opposition, Plaintiff argues that Bollinger failed to conduct an interactive process to accommodate his disability and that Bollinger's only accommodation was that Plaintiff could return to work when he was no longer taking Suboxone.[223]

"Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability."[224] "A prima facie claim for failure to accommodate requires that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations."[225] The Fifth Circuit has recognized that "in the ordinary case the trier of fact decides whether a suggested accommodation is reasonable."[226]

"An employee who needs an accommodation because of a disability has the responsibility of informing [his] employer."[227] "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive

---

[222] *Id.*

[223] Rec. Doc. 45 at 16.

[224] *Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (quoting *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)).

[225] *Id.* (quoting *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)) (internal quotation marks omitted).

[226] *Alford v. Teleplex, Inc.*, 95 F.3d 48, at *2 (5th Cir. 1996) (citing *Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1988) ("Although in the ordinary case the trier of fact decides whether a suggested accommodation is reasonable,13 we conclude as a matter of law that under these facts no reasonable trier of fact could find such a reallocation of essential functions to be required by the ADA.").

[227] *Griffin*, 661 F.3d at 224 (quoting *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)).

discussions to determine the appropriate accommodation."[228] "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation."[229] "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."[230] However, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer."[231] "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave."[232]

For the reasons discussed above, genuine issues of material fact preclude summary judgment on the issue of whether Plaintiff is a qualified individual. It is undisputed that Bollinger was aware of Plaintiff's disability and that Plaintiff requested an accommodation of being able to continue using Suboxone.[233] Defendants contend that the undisputed facts show that Bollinger offered Plaintiff the following four accommodations: (1) Bollinger offered to allow Plaintiff to apply for a non-safety sensitive position if such a position became available;[234] (2) Jerome Eymard, a representative for Bollinger, offered Plaintiff 14 weeks of job-protected leave in order

---

[228] *Id.* (quoting *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)).

[229] *Id.* (quoting *Agro Distrib.*, 555 F.3d at 471).

[230] *Id.* (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

[231] *Id.* (quoting *Loulseged*, 178 F.3d at 736).

[232] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016)).

[233] Rec. Doc. 45-3.

[234] Rec. Doc. 57 at 7 (citing Rec. Doc. 45-1 at ¶ 45).

to allow him time to wean himself off of Suboxone;[235] (3) Bollinger offered Plaintiff an additional month of leave in the form of a guaranteed rehire after his termination if Plaintiff weaned himself off of Suboxone by that time;[236] and (4) Bollinger offered Plaintiff the opportunity to reapply for any available position after his time for guaranteed rehire expired.[237] In opposition, Plaintiff argues that Bollinger failed to conduct an interactive process to accommodate his disability and that Bollinger's only accommodation was that Plaintiff could return to work when he was no longer taking Suboxone.[238]

Plaintiff presents evidence that his treating physician released him to return to work as a welder without any job restrictions despite his treatment for opioid dependency and his "opioid agonist therapy."[239] Although Plaintiff is only entitled to a reasonable accommodation, not his preferred accommodation, there are genuine issues of material fact as to whether allowing Plaintiff to continue taking Suboxone was a reasonable accommodation or whether some other accommodation could have been made for Plaintiff's disability.

Defendants cite *Christopher L. Emmons v. C-Innovation, LLC*, where another district judge in the Eastern District of Louisiana dismissed the plaintiff's failure-to-accommodate claim on summary judgment, stating, "Although Plaintiff apparently would have preferred to continue using Adderall for his ADHD, it is beyond peradventure that ADA ensures only a reasonable

---

[235] *Id*. (citing Rec. Doc. 45-1 at ¶ 46).

[236] *Id*. (citing Rec. Doc. 45-1 at ¶ 49).

[237] *Id*. (citing Rec. Doc. 45-1 at ¶ 50).

[238] Rec. Doc. 45 at 16.

[239] Rec. Doc. 45-3 at 5.

accommodation of disability where such an accommodation is possible. On the instant showing made, no dispute of material fact has been show to exist regarding the reasonableness of the accommodation made by Defendant . . . ."[240] However, *Emmons* is not binding on this court. Moreover, this case is factually distinguishable from *Emmons.* There, the employer presented evidence that it attempted to work with the plaintiff to "determine if it was possible for him to switch to an alternative medication which did not cause a safety-risk but would still allow him to work with his ADHD."[241]

In this case, the accommodations provided by Bollinger only accommodated Plaintiff's disability in so far as they would have allowed Plaintiff to continue working if he "weaned" himself off of Suboxone. As discussed above, the disability alleged here is not just Plaintiff's opioid dependency, but the fact that he must take certain medications to manage the condition. There are issues in dispute as to whether Plaintiff could have safely performed his job while taking Suboxone, whether the decision to exclude all individuals who take Suboxone was consistent with business necessity, and whether Plaintiff posed a "direct threat" to himself and others while using Suboxone. Furthermore, the issue of whether an accommodation is reasonable is generally a question of fact.[242] Therefore, summary judgment on this issue is not appropriate.

**C.    *Whether Defendants are Entitled to Summary Judgment on Plaintiff's Invasion of Privacy Claim?***

Finally, Defendants assert that they are entitled to summary judgment on Plaintiff's claim

---

[240] No. 17-4674, Rec. Doc. 32 (E.D. La. Apr. 9, 2018) (Engelhardt, J.).

[241] No. 17-4674, Rec. Doc. 26 at 10.

[242] *Alford*, 95 F.3d at *2.

for invasion of privacy under Louisiana law.[243] In response, Plaintiff avers that the Court dismissed his state law claims.[244] However, Plaintiff's assertion is incorrect as the Court's order on Defendants' Motion to Dismiss only dismissed Plaintiff's request for punitive damages under state law, not the underlying state law claims.[245]

Under Louisiana law, "[t]he tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated."[246] Louisiana courts have determined four ways an invasion of privacy can occur: "1) by appropriating an individual's name or likeness; 2) by unreasonably intruding on physical solitude or seclusion; 3) by giving publicity which unreasonably places a person in a false light before the public; and 4) by an unreasonable public disclosure of embarrassing private facts."[247] Furthermore, Louisiana courts "have held that when a person consents to the release of information, there is no invasion of privacy."[248]

In this case, Defendants present evidence showing that Family Medical and Dr. Duet sought Plaintiff's medical records in order to conduct the fitness for duty evaluation requested by Bollinger.[249] Defendants also present evidence showing that Plaintiff was aware Family Medical

---

[243] *See* Rec. Doc. 38-2 at 21 (citing *Smith v. Arkansas Louisiana Gas Co.*, 26-180 (La. App. 2 Cir. 10/26/94); 645 So.2d 785, 791).

[244] Rec. Doc. 45 at 1.

[245] Rec. Doc. 22 at 22.

[246] *Tate v. Woman's Hosp. Foundation*, 2010-0425 (La. 1/19/11), 56 So. 3d 194, 197 (internal citations omitted).

[247] *Id.* (internal citations omitted).

[248] *Id.* (internal citations omitted).

[249] Rec. Doc. 38-3 at 7.

would obtain these records, and in fact Plaintiff helped Family Medical obtain the records.[250] Plaintiff has not put forth any summary judgment evidence that Dr. Duet and Family Medical's actions in obtaining Plaintiff's medical records were unreasonable or that Plaintiff did not authorize or consent to Family Medical's obtainment of his medical records. Accordingly, because no genuine issues of material fact are in dispute, the Court finds that summary judgment in favor of Defendants is appropriate on Plaintiff's claims for invasion of privacy.

---

[250] *Id.*

### IV. Conclusion

For the foregoing reasons, the Court denies the Motion for Summary Judgment with regard to Plaintiff's ADA claims against Bollinger because genuine issues of material fact are in dispute. Furthermore, because no genuine issues of material fact are in dispute as to Plaintiff's invasion of privacy claim, the Court finds that summary judgment in favor of Defendants is appropriate on Plaintiff's claims for invasion of privacy.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion for Summary Judgment"[251] is **GRANTED IN PART** to the extent it seeks summary judgment on Plaintiff's invasion of privacy claim.

**IT IS FURTHER ORDERED** that the motion is **DENIED IN PART** to the extent it seeks summary judgment on Plaintiff's ADA claims.

**NEW ORLEANS, LOUISIANA,** this  5th  day of July, 2018.

*Nannette Jolivette Brown*
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[251] Rec. Doc. 38.